UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ANGELA GUTIERREZ, individually and on behalf of all others similarly situated, | : : : : | COMPLAINT  NO. _____ |
| Plaintiff, | : : | CLASS ACTION |
| v. | : : | JURY TRIAL DEMANDED |
| NURTURE, INC., | : : | |
| Defendant. | : : | |

**CLASS ACTION COMPLAINT**

Plaintiff Angela Gutierrez, on behalf of herself and all others similarly situated, by her undersigned attorneys, brings this Class Action Complaint against Defendant, Nurture, Inc. (hereinafter "Nurture"), for its negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the presence of toxic metals in its baby food products sold throughout the United States. Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Classes (defined below), including requiring full disclosure of all such substances in Defendant's marketing and advertising, and restoring monies to the members of the proposed Classes. Plaintiff alleges the following based upon personal knowledge as to herself and her own actions, and, as to all other matters, alleges, upon information and belief and investigation of her counsel. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**INTRODUCTION**

1.      This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the proposed Class and subclass defined below, all of whom purchased one or more baby food products manufactured by Nurture.[1]

2.      Nurture is an American manufacturer of Baby Food Products, which sells Happy Family Organics, including baby food products under the brand name "HappyBABY."

3.      Parents like Plaintiff trust manufacturers like Defendant Nurture to sell baby food that is safe, nutritious, and free from harmful toxins, contaminants and chemicals.   Parents purchase Baby Food Products with the expectation that they are free from heavy metals, substances known to have significant, harmful health effects.

4.      Because consumers do not have the scientific knowledge necessary to determine whether the Baby Food Products contain heavy metals or to know or ascertain the true nature of the ingredients in the Baby Food Products, they must rely on Defendant to honestly represent the contents of its products.

5.      On February 4, 2021, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, released the results of an investigation into leading baby food manufacturers in the United States relating to alleged high amounts of detrimental metals in baby food.  The report entitled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury," ("Subcommittee Report") revealed that "[i]nternal company standards permit dangerously high levels of toxic heavy metals, and

---

[1] The term "Baby Food Products" refers to all the Nurture baby food products that contain heavy metals, including the Nurture Puffs and bars purchased by Plaintiff.  Plaintiff reserves the right to amend this definition upon completion of discovery.

documents revealed that the manufacturers have often sold foods that exceeded those levels." Subcommittee Report at 4.

6.      Heavy metals are not listed as an ingredient on the product labels of the Baby Food Products.  Nor does Defendant warn of the potential presence of heavy metals in the Baby Food Products.  Unbeknownst to Plaintiff and other members of the proposed Class and subclass, and contrary to the representations on marketing and advertising, the Baby Food Products contain toxic heavy metals, including inorganic arsenic, lead, cadmium, and mercury, at levels above what is considered safe for babies.  Had the presence of these heavy metals been disclosed to Plaintiff and the members of the proposed Class and subclass prior to their purchase of the Baby Food Products, they would not have purchased the Baby Food Products.  Further, absent accurate marketing and advertising in the future, there is no way for Plaintiff or the members of the proposed Class and subclass to determine whether Defendant has reformulated or removed the heavy metals from its Baby Food Products and, thus, will be unable to rely on Defendant's representations.

7.      Defendant knows that its customers trust the quality of its baby food products and that these customers expect Defendant's products to be free of harmful ingredients such as heavy metals.  Nurture is also aware that many consumers seek out and purchase premium baby foods that contain high quality ingredients, free of toxins, contaminants or chemicals and that these consumers will pay more for baby foods that they believe possess these qualities.

8.      Defendant's promises, warranties, pricing, statements, claims, packaging, marketing and advertising center on representations that are intended to, and do, convey to consumers that its products, including its Baby Food Products, possess certain qualities and characteristics.

3

9.     No reasonable consumer seeing Defendant's marketing and packaging would expect the Baby Food Products to contain heavy metals or other contaminants.  Reasonable consumers, like Plaintiff, would consider the inclusion of heavy metals or other toxins or contaminants a material fact when considering what baby food products to purchase.

10.     Defendant intended for consumers like Plaintiff to rely on its marketing, and reasonable consumers did rely on Nurture's marketing.  As detailed herein, because the Baby Food Products contained undisclosed toxins, contaminants, and/or heavy metals, the Baby Food Products' packaging and marketing is deceptive, misleading, unfair and/or false.

11.     Defendant's Baby Food Products and corresponding marketing do not have a disclaimer or warning that the items may contain heavy metals or other undesirable toxins or contaminants that can accumulate in a child's body over time and cause deleterious effects.

12.     Defendant's wrongful marketing and advertising, which includes misleading, deceptive, unfair, and false marketing and omissions, allowed the company to capitalize on, and reap enormous profits from, consumers who paid the purchase price or a premium price for the Baby Food Products that were not sold as advertised.  Defendant continues to wrongfully induce consumers to purchase its Baby Food Products that are not as advertised.

13.     Plaintiff and the members of the proposed Class and subclass thus bring claims for consumer fraud and seek damages, injunctive and declaratory relief, interest, costs, and attorneys' fees.

**THE PARTIES**

14.     Plaintiff Angela Gutierrez is, and at all relevant times hereto has been, a citizen of the State of New Jersey and is a member of the proposed class and subclass defined herein.  She purchased Defendant's products, including Puffs and bars at issue in the Complaint.  Plaintiff

purchased these products for her child through Amazon and from stores in or near Paramus, New Jersey.  Prior to purchasing the products, Plaintiff saw Defendant's advertising, marketing and nutritional claims, upon which she relied in deciding to purchase these products.

15.     Plaintiff believed she was feeding her child healthy, nutritious foods during the time Plaintiff purchased and fed her child the Baby Food Products.  Due to the false and misleading claims and omissions by Defendant as described herein, Plaintiff was unaware that the Baby Food Products contained any level of toxic heavy metals, and Plaintiff would not have purchased the food if that information had been fully disclosed.

16.     As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct, Plaintiff was injured when she paid the purchase price or a price premium for the Baby Food Products that did not deliver what they promised.  Plaintiff paid the purchase price with the assumption that the Baby Food Products' marketing and advertising was accurate and that the Products were free of heavy metals and safe for children to ingest.  Plaintiff would not have paid this money had she known that the Baby Food Products contained excessive levels of heavy metals.

17.     Defendant Nurture, Inc. is a Delaware corporation with its principal place of business at 40 Fulton Street, New York, NY 10038.   Defendant formulates, develops, manufactures, distributes, markets, advertises, and sells its Baby Food Products throughout the United States.

18.     Defendant states on its website, "We are on a mission to change the trajectory of children's health through nutrition."  It further touts its "Quality and Safety": "We taste and thoroughly analyze every batch of food and each individual ingredient that goes into our products." Moreover, Defendant represents: "What your little one eats in the first few years of life is crucial - it's important that their diet provides the nutrients and vitamins needed for proper development."

Defendant also states, "As parents, we hold ourselves to strict standards to provide your little one with products that, when part of a balanced diet, help them grow healthy and strong. Every product we make goes through a rigorous quality and safety test so you can feel confident in what you're feeding your family."

19.     Defendant sells baby food products under the brand name "Happy Baby," among others. The Happy Baby products include pouches, jars, cereals, teethers, puffs, and yogurt drops. The Congressional Report concludes that a large portion of such products are tainted and contain dangerous levels of toxic heavy metals.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because the claims of the proposed members of the Classes exceed $5,000,000 and because Defendant is a citizen of a different state than one or more members of the proposed Classes.

21.     This Court has personal jurisdiction over Defendant because Defendant maintains its corporate headquarters in this District. In addition, Defendant regularly sells and markets its Baby Food Products in this District.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events complained of herein took place in this District, and this Court has jurisdiction over Defendant. Defendant has intentionally availed itself of the laws and markets of this District, and Defendant is subject to general personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

23.     Defendant manufactures, distributes, markets, offers for sale and sells the Baby Food Products throughout the United States, including in this District. Defendant has advertised

and continues to advertise these products via television, print advertisements, point-of-sale displays, product packaging, Internet advertisements including on social media, as well as other promotional materials.

24. The United States House of Representatives Subcommittee on Economic and Consumer Policy published the Subcommittee Report on February 4, 2021, revealing its findings that numerous commercial baby foods, including those manufactured by Defendant, are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury." *See* Subcommittee Report at 2. Congressional investigators examined a wide range of baby foods including rice cereals, purees, puffs and juices. The Subcommittee Report found that organic products were as likely as conventional products to contain heavy metals. Subcommittee Report at 10.

25. Though heavy metals are naturally found in the environment, most heavy metals in foods come from contaminated soil or water. The contamination comes from either farming or manufacturing practices, such as the use of pesticides, mining, and smelting or pollution.

26. Defendant was one of the seven largest baby food manufacturers in the United States from whom the Subcommittee requested internal documents and test results. Nurture responded to the requests and produced internal testing policies and results for ingredients and/or finished products.

27. The Subcommittee Report found that baby food companies such as Nurture regularly sell products that contain ingredients that exceed their own internal standards for heavy metals. According to the Subcommittee Report, most baby food companies do not regularly test the products before they go to market, and even when they do, products with high levels of heavy metals are still sold.

28.     Representative Raja Krishnamoorthj, chairman of the Subcommittee, told Consumer Reports that there are "dangerous levels of toxic metals in baby foods, and the levels far exceed what experts and governing bodies say is permissible.  Left to their own devices, baby food makers have set testing standards in excess of what recommended standards are, and even then, they often violate their standards."

29.     The Subcommittee Report provides evidence that baby food companies such as Defendant are not doing enough to reduce risk from exposure to these heavy metals, and that parts of the manufacturing process, including the addition of vitamins and mineral mixes, may be contributing to the high levels of these metals in the Baby Food Products.  The Subcommittee Report concluded that "These toxic heavy metals [in baby foods] pose serious health risks to babies and toddlers.  Manufacturers knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever." Subcommittee Report at 59.

## Defendant Falsely Marketed Its Baby Food Products

30.     Defendant packages, markets, advertises, manufactures, distributes, and sells its Baby Food Products throughout the United States, including in this District.  Defendant markets the Baby Food Products as healthy and omits any mention of heavy metals.

31.     Based on Defendant's decision to advertise and market its Baby Food Products as healthy, safe and high quality, Defendant had a duty to ensure that these statements were true and not misleading.  As such, Defendant knew or should have known that the Baby Food Products included undisclosed and excessive levels of toxic, heavy metals, and that these toxins accumulate in the body over time.

32.     The marketing of the Baby Food Products also fails to disclose that the products contain or may contain any level of heavy metals or other undesirable toxins or contaminations. Defendant intentionally concealed and omitted this important information in order to induce and mislead reasonable consumers like Plaintiff to purchase the Baby Food Products.

33.     As a result of Defendant's omissions, a reasonable consumer would have no reason to suspect the presence of heavy metals in the Baby Food Products without conducting his or her own scientific tests or reviewing third party scientific testing of these products.

**Consumers Were Misled and Deceived by Defendant's Misrepresentations and Material Omissions in its Marketing**

34.     Defendant's marketing of its Baby Food Products wrongfully conveys to consumers like Plaintiff that these foods have certain superior quality and characteristics that they do not actually possess.

35.     For example, Defendant misleadingly caused Plaintiff and other consumers to believe that its Baby Food Products do not contain heavy metals through its marketing and omissions, which is material information to a reasonable consumer.

36.     Defendant's marketing wrongfully fails to disclose to Plaintiff and consumers the presence of heavy metals in its Baby Food Products.

37.     Based on Defendant's marketing, a reasonable consumer would not suspect the presence of heavy metals, nor would a reasonable consumer be able to detect these metals in the Baby Food Products without conducting his or her own scientific testing or reviewing scientific testing conducted on these products.

38.     Reasonable consumers must and do rely on Defendant to honestly report what is in the Baby Food Products.

39.     In light of Defendant's marketing, including its commitment to "higher standards," Defendant knew or should have known that the Baby Food Products contained heavy metals.

40.     Defendant intended for consumers to rely on its marketing, and reasonable consumers did in fact so rely.

41.     Defendant had a duty to ensure that the Baby Food Products were as they were represented, and not deceptively, misleadingly, unfairly, or falsely marketed.

**Defendant Knew or Should Have Known its Representations and Material Omissions in its Marketing Are Misleading**

42.     At all times herein, Defendant knew or should have known that its Baby Food Products contained heavy metals.

43.     Defendant knew that heavy metals are a potentially dangerous contaminant that poses health risks to humans, and particularly to babies and children.

44.     The Baby Food Products had a risk of and did contain heavy metals due to Defendant's failure to monitor for their presence in the ingredients and finished products and remove them.  Defendant was aware of this risk and failed to disclose it to Plaintiff and the Class.

45.     Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, to minimize the presence of heavy metals in the Baby Food Products to the extent reasonably possible.

46.     Defendant knew consumers purchased the Baby Food Products based on the reasonable expectation that Defendant manufactured the Baby Food Products to the highest standards.  Based on this expectation, Defendant knew or should have known consumers reasonably inferred that Defendant would hold the Baby Food Products to the highest standard.

47.     As a result of the foregoing, Defendant's marketing is deceptive, misleading, unfair and false to Plaintiff and other consumers of baby food, including under the consumer fraud laws of New Jersey.

48.     Defendant acted negligently, reckless, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false marketing and omissions as described herein.

**Heavy Metals Exceed Safe Limits**

49.     Arsenic, lead, cadmium, and mercury are toxic heavy metals.  The U.S. Food and Drug Administration ("FDA") and the World Health Administration ("WHO") have declared these heavy metals to be dangerous to human health, particularly to babies and children.  Subcommittee Report at 2.

50.     Exposure to heavy metals in food can be harmful to babies' neurological development and long-term brain function.  Even exposure to low levels of these metals can lead to serious and potentially irreversible damage to brain development.  *Id.*  Babies may be more susceptible to levels of toxins and substances as they are in the critical years of brain growth and development.  According to James Dickerson, Ph.D., chief scientific officer for Consumer Reports "[e]xposure to heavy metals has a disproportionate adverse effect on developing minds and bodies."  Dickerson said that exposure to these metals has "deleterious effects on the developing infant mind, brain, cardiovascular system, and immune system" and can lead to a lower IQ or behavioral problems like ADHD, as well as an increased risk of skin and bladder cancer.

51.     Nurture created internal standards but did not follow them.  Nurture describes these standards as "goal thresholds" that "are not used to make product disposition decisions and are not a pre-condition to product release."  Instead, its testing regime is limited to monitoring the supply

chain.  Nurture's thresholds are not actually used to prevent products that contain high levels of toxic heavy metals from being sold.  Subcommittee Report at 33.

    a.    **Arsenic**

52.    Arsenic is an odorless and tasteless element that does not degrade or disappear.  It occurs in the environment and can be found in rocks, soil, water, air, plants, and animals. Inorganic arsenic is highly toxic and a known cause of human cancers.  Exposure to arsenic can also cause respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, and damage to children's central nervous systems and cognitive development. Subcommittee Report at 10.

53.    Because of the risks associated with exposure to arsenic, both the FDA and the Environmental Protection Agency ("EPA") have set limits for the allowable amount of arsenic in baby foods, including formula and juices, as well as for drinking water.  The allowable limit of arsenic is 10 parts per billion ("ppb") for humans in drinking water (regulated by the EPA). Subcommittee Report at 13.

54.    In August 2020, the FDA set a limit for inorganic arsenic in infant rice cereal at 100 ppb.  According to the Subcommittee Report, Nurture (HappyBABY) sold baby foods after tests showed they contained as much as 180 parts per billion (ppb) inorganic arsenic.  Over 25% of the products Nurture tested before sale contained over 100 ppb inorganic arsenic.  Nurture's testing shows that the typical baby food product it sold contained 60 ppb inorganic arsenic. Subcommittee Report at 3.

55.    The Subcommittee Report stated:

> According to internal company documents, Nurture sells products even after testing confirms that they are dangerously high in inorganic arsenic.  Nurture sold one such product, Apple and Broccoli Puffs, despite tests results showing it contained 180 ppb inorganic arsenic.

An arsenic level of 180 ppb is high by all standards, but it is 80% higher than Nurture's own internal goal threshold of 100 ppb.

***Nurture's Heavy Metal Test Results for Baby Food Products (Excerpted Entries)[34]***

| Product Name | Category | Best Before Date | Parameter | Goal Thresh old | Result | | Unit | Date of Test Report | Disposition |
|---|---|---|---|---|---|---|---|---|---|
| Apple & Broccoli Puffs | Baby 7+ Months | 9/7/2018 | Inorganic Arsenic | 100 | 180 | 180 | ppb | 11/01/17 | Sell - Testing For Monitoring & Supply Chain Improvement Purposes Only |
| Banana & Pumpkin Puffs | Baby 7+ Months | 10/11/2018 | Inorganic Arsenic | 100 | 160 | 160 | ppb | 10/31/17 | Sell - Testing For Monitoring & Supply Chain Improvement Purposes Only |
| Strawberry & Beet Puffs | Baby 7+ Months | 7/24/2018 | Inorganic Arsenic | 100 | 160 | 160 | ppb | 10/31/17 | Sell - Testing For Monitoring & Supply Chain Improvement Purposes Only |

Nurture routinely sold products that exceeded its internal standards. Twenty-nine other products that Nurture tested and sold registered over 100 ppb inorganic arsenic. In total, over 25% of the products that Nurture tested for inorganic arsenic, and sold, had inorganic arsenic levels above 100 ppb.

***Nurture's Heavy Metal Test Results for Baby Food Products (Excerpted Entries)***

| Product Name | Goal Threshold | Result | Date of Test Report | Disposition |
|---|---|---|---|---|
| Apple & Broccoli Puffs | 100 | 180 | 11/01/17 | Sell |
| Banana & Pumpkin Puffs | 100 | 160 | 10/31/17 | Sell |
| Strawberry & Beet Puffs | 100 | 160 | 10/31/17 | Sell |
| Kale & Spinach Puffs | 100 | 150 | 10/31/17 | Sell |
| Kale & Spinach Puffs | 100 | 150 | 10/31/17 | Sell |
| Purple Carrot & Blueberry Puffs | 100 | 150 | 11/17/17 | Sell |
| Sweet Potato & Carrot Puffs | 100 | 150 | 10/31/17 | Sell |
| Sweet Potato & Carrot Puffs | 100 | 150 | 10/31/17 | Sell |
| Apple Rice Cakes | 100 | 130 | 02/08/17 | Sell |
| Apple Rice Cakes | 100 | 130 | 02/08/17 | Sell |
| Sweet Potato & Carrot Puffs | 100 | 122 | 09/13/18 | Sell |
| Apple Rice Cakes | 100 | 120 | 02/08/17 | Sell |
| Blueberry Beet Rice Cakes | 100 | 120 | 02/08/17 | Sell |
| Purple Carrot & Blueberry Puffs | 100 | 120 | 10/31/17 | Sell |
| Apple & Broccoli Puffs | 100 | 115 | 10/15/18 | Sell |
| Strawberry & Beet Puffs | 100 | 114 | 03/21/19 | Sell |
| Purple Carrot & Blueberry Puffs | 100 | 112 | 06/05/18 | Sell |
| Apple Rice Cakes | 100 | 110 | 07/28/17 | Sell |
| Blueberry Beet Rice Cakes | 100 | 110 | 02/08/17 | Sell |
| Blueberry Beet Rice Cakes | 100 | 110 | 02/08/17 | Sell |

13

| Product Name | Goal Threshold | Result | Date of Test Report | Disposition |
|---|---|---|---|---|
| Strawberry & Beet Puffs | 100 | 108 | 12/10/18 | Sell |
| Strawberry & Beet Puffs | 100 | 108 | 09/21/18 | Sell |
| Apple & Broccoli Puffs | 100 | 107 | 05/30/19 | Sell |
| Strawberry & Beet Puffs | 100 | 107 | 05/22/19 | Sell |
| Strawberry & Beet Puffs | 100 | 105 | 09/21/18 | Sell |
| Strawberry & Beet Puffs | 100 | 104 | 08/22/18 | Sell |
| Banana & Pumpkin Puffs | 100 | 103 | 04/24/19 | Sell |
| Sweet Potato & Carrot Puffs | 100 | 103 | 04/24/19 | Sell |
| Banana & Pumpkin Puffs | 100 | 101 | 09/21/18 | Sell |

The average amount of inorganic arsenic in the baby foods that Nurture tested and sold was 59.54 ppb.  That towers over existing and recommended standards, including FDA's and EPA's water limits of 10 ppb.

At least 89 of Nurture's final products—over 78% of those products tested—tested at 9 ppb inorganic arsenic or above.

For results under 9.54 ppb, Nurture did not differentiate—it marked them all as "<9.54." Because of this "less than" reporting format, there is no way to know if any of Nurture's products were free of inorganic arsenic.

*Summary of Nurture's Inorganic Arsenic Results*

| |
|---|
| 180 ppb – Nurture's product with the highest amount of inorganic arsenic:  Apple & Broccoli Puffs. |
| >100 ppb – Over 25% of the baby food products that were tested for inorganic arsenic had over 100 ppb inorganic arsenic. |
| 59.54 ppb – Average amount of inorganic arsenic in all baby food products tested for inorganic arsenic. |
| >50 ppb – Over 50% of Nurture's baby food products that were tested for inorganic arsenic contained over 50 ppb inorganic arsenic. |

Subcommittee Report at 14-15.

**b.     Cadmium**

56.     Exposure to cadmium is associated with decreases in IQ and the development of Attention Deficit Hyperactivity Disorder ("ADHD").  The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA likewise determined that cadmium is a probable human carcinogen.  It has been

specifically noted that "[k]idney and bone effects have…been observed in laboratory animals ingesting cadmium."

57.     There has been some regulation on the use of cadmium outside of the baby food realm, with the EPA setting a limit of 5 ppb in drinking water and the FDA setting a limit of 5 ppb in bottled water.  *See* Subcommittee Report at 29.  The WHO has set a limit of 3 ppb for cadmium in drinking water.  *Id*.  Moreover, organizations like Healthy Babies Bright Futures have set a goal of no measurable cadmium in baby food and Consumer Reports has called for a 1 ppb cadmium limit in fruit juices.  *Id*.  The European Union has set a limit ranging from 5-20 ppb cadmium in baby formula.  *Id*.

58.     The Subcommittee Report found that baby food manufacturers, including Nurture, sold many baby food products that exceeded these limits on cadmium. *Id*. Nurture sold multi-grain cereal with 49 ppb cadmium.  Nurture sold another 125 products that tested over 5 ppb, which is the EPA's limit for drinking water. Sixty-five percent of Nurture (HappyBABY) finished baby food products contained more than 5 ppb cadmium. Subcommittee Report at 4.  Nurture sold multi-grain cereal with 49 ppb cadmium.  Nurture sold another 125 products that tested over 5 ppb, which is the EPA's limit for drinking water.

### Nurture's Heavy Metal Test Results for Baby Food Products

| Product Name | Category | Best Before Date | Parameter | Goal Threshold | Result | Unit | Date of Test Report | Disposition |
|---|---|---|---|---|---|---|---|---|
| Multi-Grain Cereal Canister | Baby 6+ Months | 11/16/2018 | Cadmium | 50 | 49 | ppb | 08/30/17 | Sell - Testing For Monitoring & Supply Chain Improvement Purposes Only |
| Strawberry Raspberry | Baby 7+ Months | 1/18/2019 | Cadmium | 50 | 36 | ppb | 12/06/17 | Sell - Testing For Monitoring & Supply Chain Improvement Purposes Only |
| Kale & Spinach Puffs | Baby 7+ Months | 12/4/2020 | Cadmium | 50 | 35 | ppb | 10/09/19 | Sell - Testing For Monitoring & Supply Chain Improvement Purposes Only |
| Strawberry Raspberry | Baby 7+ Months | 11/10/2019 | Cadmium | 50 | 31 | ppb | 10/23/18 | Sell - Testing For Monitoring & Supply Chain Improvement Purposes Only |
| Strawberry Raspberry | Baby 7+ Months | 11/10/2019 | Cadmium | 50 | 30 | ppb | 10/31/18 | Sell - Testing For Monitoring & Supply Chain Improvement Purposes Only |

Subcommittee Report at 31.

c.      **Lead**

59.      Lead is persistent, and it can bioaccumulate in the body over time.[2]   It is a carcinogen and developmental toxin known to cause health and developmental problems in children including decreased cognitive performance, delayed puberty, and reduced postnatal growth.  Because lead can build up in the body over time, even low levels of chronic exposure can be toxic and seriously dangerous to one's health.

60.      The American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports have all called for a 1 ppb level of lead in food and drinks that babies and children consume. Subcommittee Report at 21. While there is no lead standard for lead in baby foods, the FDA standard for lead in bottled water is 5 ppb lead.   *See* 21 C.F.R. § 165.110(b)(4)(iii)(A).

61.      The Subcommittee Report found that Nurture (HappyBABY) sold finished baby food products that tested as high as 641 ppb lead.  Almost 20% of the finished baby food products that Nurture tested contained over 10 ppb lead.  Subcommittee Report at 3.

d.      **Mercury**

62.      Mercury is a known toxin, and pre-natal exposure has been associated with affected neuro-development, a decreased IQ, and autistic behaviors.  The impact of mercury exposure to humans and animals has been studied for years; as early as 1997, the EPA issued a report to Congress that detailed the health risks to humans and animals.  Because of these risks and

---

[2] *See* https://www.espa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water.

mercury's toxicity, both state and federal regulators have enacted regulations to protect humans and animals.

63.     There has been some regulation of mercury outside the baby food context.  For example, the EPA has capped mercury in drinking water at 2 ppb.  Consumer advocates have urged for even stricter standards for baby food.  Health Babies Bright Futures has called for a goal of *no* measurable mercury in baby food.  *See* Subcommittee Report at 32.

64.     Nurture (HappyBABY) sold finished baby food products containing as much as 10 ppb mercury. Subcommittee Report at 4.

65.     Nurture (HappyBABY) sold all products tested, regardless of how much toxic heavy metal the baby food contained.  By company policy, Nurture's toxic heavy metal testing is not intended for consumer safety.  The Food and Drug Administration (FDA) has only finalized one standard—100 ppb inorganic arsenic in infant rice cereal—and Nurture set its internal standard for that product 15% higher than the FDA limit, at 115 ppb. Subcommittee Report at 4.

66.     Based on the foregoing, reasonable consumers like Plaintiff, would consider the inclusion of these toxic metals in the Baby Food Products to be a material fact when considering which baby food to purchase.

67.     Defendant knew that properly and sufficiently monitoring and testing for heavy metals in its ingredients and Baby Food Products was critical.

68.     Finally, Defendant knew or should have known that it could control the levels of heavy metals in the Baby Food Products by properly monitoring their ingredients for heavy metals and adjusting any formulation or diet to reduce ingredients that contained higher levels of heavy metals.

69.     Defendant also knew it was not properly and sufficiently testing for the presence of heavy metals in the Baby Food Products.

70.     Defendant knew or should have known that consumers reasonably expected it to test for and monitor the presence of heavy metals in the Baby Food Products and ingredients.

71.     Defendant knew, yet failed to disclose, its lack of regular testing and knowledge of the risk or presence of heavy metals in the Baby Food Products.

72.     The statements, representations, partial disclosures, and omissions made by Defendant are crafted to deceive the public as they create an image that the Baby Food Products are healthy, nutritious, and made from the best ingredients, are subject to strict quality control, and are free of heavy metals.

73.     Reasonable consumers, such as Plaintiff and the Class members, would have no reason to doubt Defendant's statements regarding the quality of the Baby Food Products. Defendant's failure to disclose and/or concealment of the toxins in the Baby Food Products together with the misrepresentations alleged herein that were intended to, and did, cause consumers like Plaintiff to purchase products they otherwise would not have if the true quality and ingredients were disclosed.

74.     As a result of the wrongful marketing, including the misleading, deceptive, unfair and false representations and omissions, Defendant capitalized on and reaped enormous profits from consumers like Plaintiff who paid the purchase price or a premium for the Baby Food Products that were not as advertised.

**PLAINTIFF'S RELIANCE IS REASONABLE AND FORESEEABLE**

75.     Plaintiff and members of the Classes reasonably relied on Defendant's claims, warranties, representations, advertisements, and other marketing concerning the qualities and benefits of the Baby Food Products in making their purchase decisions.

76.     Had Plaintiff and members of the Classes known of Defendant's misrepresentations and material omissions regarding the presence of toxic heavy metals in its Baby Food Products, Plaintiff and members of the Classes would not have purchased the Baby Food Products.

**CLASS ACTION ALLEGATIONS**

77.     Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure. Plaintiff brings this action and seeks certification of the following proposed classes:

> All persons who, during the applicable statute of limitation period to the present, purchased Defendant's Tainted Baby Foods in the United States for personal/household use, and not for resale (the "Class").

78.     Plaintiff also brings this action individually and on behalf of the following New Jersey Subclass:

> All persons who, during the applicable statute of limitation period to the present, purchased Defendant's Tainted Baby Foods in New Jersey for personal/household use, and not for resale ("the Subclass").

79.     Excluded from the proposed Class and Subclass (the "Classes") are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents, employees, and legal representatives, any judge to whom this action is assigned to this matter and any member of such judge's staff and immediate family.

80.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

81.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1) --** The members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Classes number in the thousands or more.  The number of members in the Classes is presently unknown to Plaintiff but may be verified by Defendant's records.  Members of the Classes may be notified of the pendency of this action by mail, e-mail, Internet postings, and/or publication.

82.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3) –** Common questions of law and fact exist as to all members of the Classes and predominate over individual questions.  Such common questions of law or fact include, but are not limited to:

      a.   Whether Defendant owed a duty of care;

      b.   Whether Defendant knew or should have known that the Baby Food Products contained heavy metals;

      c.   Whether the Baby Food Products contain dangerous levels of toxic heavy metals;

      d.   Whether the marketing, advertising, packaging, and other promotional materials for the Baby Food Products are deceptive;

      e.   Whether Defendant's actions violate the New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8-1, *et seq*.;

      f.   Whether Defendant's actions constitute common law fraud;

g.  Whether Plaintiff and members of the Classes were damaged by Defendant's conduct as alleged herein;

h.  Whether Defendant was unjustly enriched at the expense of Plaintiff and the members of the Classes; and

i.  Whether Plaintiff and the members of the Classes are entitled to injunctive relief.

83.  **Typicality – Federal Rule of Civil Procedure 23(a)(3) –** The claims of the named Plaintiff are typical of the claims of the other members of the Class and the subclass.  All members of the Classes were similarly injured by Defendant's conduct as described herein, and there are no defenses available to Defendant that are unique to Plaintiff or any particular Class members.

84.  **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4) –** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of other Class members; she has retained class counsel competent to prosecute class actions and financially able to represent the Classes.

85.  **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2) –** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class members as a whole.  In particular, Plaintiff seeks to certify the Classes to enjoin Defendant from selling or otherwise distributing Baby Food Products until such time that Defendant can demonstrate to the Court's satisfaction that its baby foods are accurately labeled.

86.  **Superiority – Federal Rule of Civil Procedure 23(b)(3) –** A class action is superior to any other means of adjudication for this controversy.  It would be impracticable for members of the Classes to individually litigate their own claims against Defendant because the

damages suffered by Plaintiff and members of the Classes are relatively small compared to the cost of individually litigating their claims.  A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I

**Fraudulent Misrepresentation Against Defendant**
**(On Behalf of Plaintiff and the Class or Alternatively the Subclass)**

87.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.  Plaintiff brings this action on behalf of herself and the Class or, alternatively, on behalf of the Subclass.

88.     Defendant falsely represented to Plaintiff and the Class that their Baby Food Products are made from the "highest quality ingredients."

89.     Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase its Baby Food Products.

90.     Defendant knew that their representations about the Baby Food Products were false or misleading due to the frequent presence of levels of heavy metals, and/or other ingredients that do not conform to the products' marketing, advertising, and statements.  Defendant allowed its advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

91.     Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Baby Food Products to their detriment. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted these products, Plaintiff's and the Class's reliance on Defendant's misrepresentations was justifiable.

92.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Food Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals, and/or other ingredients that do not conform to the products' marketing, advertising, and statements.

93.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT II

### Fraud by Omission Against Defendant
### (On Behalf of Plaintiff and the Class or Alternatively the Subclass)

94.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.  Plaintiff brings this action on behalf of herself and the Class or, alternatively, on behalf of the Subclass.

95.     Defendant concealed from and failed to disclose to Plaintiff and the Class that its Baby Food Products contained, or were at risk of containing, heavy metals, and/or other ingredients that do not conform to the products' packaging, advertising, and statements.

96.     Defendant concealed from and failed to disclose to Plaintiff and the Class that their Baby Food Products contained, or were at risk of containing, heavy metals, and/or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

97.     Defendant was under a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients and suitability of the Baby Food Products because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Baby Food Products for consumption by babies; and (3) Defendant knew that Plaintiff and the Class could not

reasonably have been expected to learn or discover that the Baby Food Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Baby Food Products.

98.     The facts concealed or not disclosed by Defendant to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Baby Food Products.

99.     Plaintiff and the Class justifiably relied on the Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Baby Food Products, which is inferior when compared to how the Baby Food Products are advertised and represented by Defendant.

100.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Food Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals, or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

101.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

102.     Defendant was under a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients and suitability of the Baby Food Products because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Baby Food Products for consumption by babies; and (3) Defendant knew that Plaintiff and the Class could not reasonably have been expected to learn or discover that the Baby Food Products

24

were misrepresented in the marketing, advertising, and websites prior to purchasing the Baby Food Products.

103.    The facts concealed or not disclosed by Defendant to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Baby Food Products.

104.    Plaintiff and the Class justifiably relied on the Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Baby Food Products, which is inferior when compared to how the Baby Food Products are advertised and represented by Defendant.

105.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Food Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals, or other ingredients that do not conform to the products' marketing, advertising, and statements.

106.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT III

### Negligent Misrepresentation Against Defendant
### (On Behalf of Plaintiff and the Class or Alternatively the Subclass)

107.    Plaintiff incorporates by reference and repeats and realleges all previously alleged paragraphs, as if fully alleged herein.  Plaintiff brings this action on behalf of herself and the Class or, alternatively, the Subclass.

108.    Plaintiff reasonably placed her trust and reliance in Defendant's representations that the Baby Food Products were marketed to her and the Class, and were healthy, nutritious, made from the best ingredients, and safe for consumption and did not contain heavy metals.

109.    Because of the relationship between the parties, Defendant owed a duty to use reasonable care to impart correct and reliable disclosures concerning the presence of heavy metals in the Baby Food Products, or based upon its superior knowledge, having spoken, to say enough not to be misleading.

110.    Defendant breached its duty to Plaintiff and the Class by providing false, misleading, and/or deceptive information regarding the nature of the Baby Food Products.

111.    Plaintiff and the Class reasonably relied upon the information provided by Defendant.  A reasonable consumer would have relied on Defendant's own warranties, statements, representations, advertising, packaging, labeling, and other marketing as to the quality, make-up and ingredients of the Baby Food Products.

112.    As a result of the misrepresentations, Plaintiff and the Class purchased the Baby Food Products, and purchased them at a premium.

113.    Defendant failed to use reasonable care in its communications and representations to Plaintiff and the Class, especially in light of its knowledge of the risks and importance of considering ingredients to consumers when purchasing the Baby Food Products.

114.    By virtue of Defendant's negligent misrepresentations, Plaintiff and the Class have been damaged in an amount to be proven at trial, or alternatively, seek rescission and disgorgement under this Count.

115.   Plaintiff reasonably placed her trust and reliance in Defendant's representations that the Baby Food Products were marketed to her and the Class, and were healthy, nutritious, made from the best ingredients, and safe for consumption and did not contain heavy metals.

116.   Because of the relationship between the parties, Defendant owed a duty to use reasonable care to impart correct and reliable disclosures concerning the presence of heavy metals in the Baby Food Products, or based upon its superior knowledge, having spoken, to say enough not to be misleading.

117.   Defendant breached its duty to Plaintiff and the Class by providing false, misleading, and/or deceptive information regarding the nature of the Baby Food Products.

118.   Plaintiff and the Class reasonably relied upon the information provided by Defendant.  A reasonable consumer would have relied on Defendant's own warranties, statements, representations, advertising, packaging, and other marketing as to the quality, make-up and ingredients of the Baby Food Products.

119.   As a result of the misrepresentations, Plaintiff and the Class purchased the Baby Food Products, and purchased them at a premium.

120.   Defendant failed to use reasonable care in its communications and representations to Plaintiff and the Class, especially in light of its knowledge of the risks and importance of considering ingredients to consumers when purchasing the Baby Food Products.

121.   By virtue of Defendant's negligent misrepresentations, Plaintiff and the Class have been damaged in an amount to be proven at trial, or alternatively, seek rescission and disgorgement under this Count.

**COUNT IV**

**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class or Alternatively the Subclass)**

122.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.  Plaintiff brings this action on behalf of herself and the Class or, alternatively, on behalf of the Subclass.

123.   Plaintiff and putative Class Members conferred a benefit on Defendant when they purchased the Baby Food Products, of which Defendant had knowledge.  By its wrongful acts and omissions described herein, including selling the Baby Food Products, which contain toxic heavy metals, including arsenic, cadmium, mercury and lead, at levels above what is considered safe for babies and did not otherwise perform as represented or for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiff and putative Class members.  Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

124.   Defendant has profited from its unlawful, unfair, misleading and deceptive practices at the expense of Plaintiff and putative Class members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.  It would be inequitable for Defendant to retain the profits, benefits and other compensation obtained from its wrongful conduct as described herein in connection with selling the Baby Food Products.

125.   Defendant has been unjustly enriched in retaining the revenue derived from the Class members' purchases of the Baby Food Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant manufactured defective Baby Food Products , and misrepresented the nature of the Baby Food Products, misrepresented their ingredients, and knowingly marketed and promoted dangerous and defective products which

28

caused injuries to Plaintiff and the Class because they would not have purchased the products based on the same representations if the true facts concerning the Baby Food Products had been known.

126.    Plaintiff and putative Class members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Baby Food Products on the same terms or for the same price had they known the true nature of the Baby Food Products and the misstatements regarding what the Baby Food Products were and what they contained.

127.    Defendant either knew or should have known that payments rendered by Plaintiff or putative Class members were given or received with the expectation that the Baby Food Products were made from "the highest quality ingredients," as represented by Defendant in advertising, on Defendant's websites, and on the Baby Food Product's labels and packaging.  It is inequitable for Defendant to retain the benefit of payments under these circumstances.

128.    Plaintiff and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

129.    When required Plaintiff and putative Class Members are in privity with Defendant because Defendant's sale of the Baby Food Products was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendant's agents for the purpose of the same of the Baby Food Products.

130.    As a direct and proximate result of Defendant's wrongful conduct, and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon profits, benefits and other compensation obtained by Defendant for its inequitable and unlawful conduct.

131.    Plaintiff and putative Class Members conferred a benefit on Defendant when they purchased the Baby Food Products, of which Defendant had knowledge.  By its wrongful acts and omissions described herein, including selling the Baby Food Products, which contain toxic heavy metals, including arsenic, cadmium, mercury and lead, at levels above what is considered safe for babies and did not otherwise perform as represented or for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiff and putative Class members.  Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

132.    Defendant has profited from its unlawful, unfair, misleading and deceptive practices at the expense of Plaintiff and putative Class members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.  It would be inequitable for Defendant to retain the profits, benefits and other compensation obtained from its wrongful conduct as described herein in connection with selling the Baby Food Products.

133.    Defendant has been unjustly enriched in retaining the revenue derived from the Class members' purchases of the Baby Food Products, because Defendant manufactured defective Baby Food Products, and misrepresented the nature of the Baby Food Products and/or their ingredients, and knowingly marketed and promoted dangerous and defective products that caused injuries to Plaintiff and the Class, and because they would not have purchased the products if the true facts concerning the Baby Food Products had been known.

134.    Plaintiff and putative Class members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Baby Food Products had the presence of heavy metals been adequately disclosed and certainly would not have

purchased them had they known the true nature of the Baby Food Products and the misstatements regarding what the Baby Food Products were and what they contained.

135.   Defendant either knew or should have known that payments rendered by Plaintiff or putative Class members were given or received with the expectation that the Baby Food Products were made from "the highest quality ingredients," as represented by Defendant in advertising, on Defendant's websites, and on the Baby Food Product's packaging.  It is inequitable for Defendant to retain the benefit of payments under these circumstances.

136.   Plaintiff and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

137.   Under these circumstances, there is no requirement for Plaintiff and the Class to demonstrate privity with Defendant.

**138.**   As a direct and proximate result of Defendant's wrongful conduct, and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon profits, benefits and other compensation obtained by Defendant for its inequitable and unlawful conduct.

### COUNT V

**Violation of New Jersey Consumer Fraud Act**
**N.J. Stat. Ann. 56:8-1, *et seq.***
**(On Behalf of Plaintiff and the Subclass)**

139.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.  Plaintiff brings this action on behalf of herself and on behalf of the Subclass.

140.   Plaintiff and the Subclass have suffered an ascertainable loss of moneys or property as a result of the use or employment by Nurture of its actions or practices in advertising the

promotion and the sale of its products as a result of its misrepresentations and material omissions concerning the safety and wholesomeness of its products and by failing to disclose that they were contaminated by the presence of toxic heavy metals that threaten the health and neurological development of infants and young children that consume its products.

141.    Plaintiff and the New Jersey Subclass are entitled to appropriate legal or equitable relief, threefold damages, plus reasonable attorneys' fees, filing fees and reasonable costs of suit, pursuant to N.J. Stat. Ann. 56:8-19.

<strong>REQUEST FOR RELIEF</strong>

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A.      Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff and Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

B.      An order enjoining Defendant from selling Baby Food Products until the higher and/or unsafe levels of heavy metals are removed;

C.      An order enjoining Defendant from selling Baby Food Products in any manner suggesting or implying that they are healthy, nutritious, and safe for consumption;

D.      An order requirinig Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.      Ordering Defendant to pay actual damages to Plaintiff and the other members of the Classes;

F.      Ordering Defendant to pay restitution to Plaintiff and the other members of the Classes;

G.      Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Classes;

H.      Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes invoked herein, to Plaintiff and the other members of the Classes;

I.      Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other members of the Class as allowable by law;

J.      Ordering Defendant to pay both pre- and post-judgment interest as allowable by law, on any amounts awarded; and

K.      Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this Complaint so triable.  Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated: April 20, 2021            **BARRACK, RODOS & BACINE**

                                                */s/ William J. Ban*
                                                William J. Ban
                                                Eleven Times Square
                                                640 8th Ave, 10th Floor
                                                New York, NY 10036
                                                Telephone: (212) 688-0782
                                                Fax: (212) 688-0783
                                                wban@barrack.com

                                                        and

                                                Mark R. Rosen
                                                3300 Two Commerce Square
                                                2001 Market Street
                                                Philadelphia, PA  19103
                                                Telephone: (215) 963-0600
                                                Fax: (215) 963-0838
                                                mrosen@barrack.com

33

and

Stephen R. Basser
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Fax: (619) 230-1874
sbasser@barrack.com